Israel TREVINO, Plaintiff-Appellant,

and

Texas Rural Legal Aid, Inc., Movant-Appellant,

v.

CELANESE CORPORATION, Celanese Chemical Company and Arthur Brothers, Inc., Defendants-Appellees.

No. 81–2482.

United States Court of Appeals, Fifth Circuit.

March 28, 1983.

Rehearing and Rehearing En Banc Denied May 16, 1983.

David Horton, Texas Rural Legal Aid, Inc., Edinburg, Tex., for movant-appellant.

Lidia Serrata, Victoria, Tex., George P. Powell, McAllen, Tex., for Trevino.

Linda Hanten, Acting Gen. Counsel, Washington, D.C., for amicus Legal Services Corp.

Michael Kendrick, Jr., Corpus Christi, Tex., for Celanese Corp. and Celanese Chemical Co.

Philip J. Pfeiffer, Paul E. Sexton, Jr., San Antonio, Tex., for Arthur Bros.

Before CLARK, Chief Judge, THORNBERRY and POLITZ, Circuit Judges.

THORNBERRY, Circuit Judge:

*Introduction*

Israel Trevino appeals from the district court's grant of summary judgment to defendants Celanese Corporation, Celanese Chemical Company,[1] and Arthur Brothers, Inc. (ABI) on his Title VII claim, and from the court's award of attorney's fees against him based on its finding that his action was frivolous, unreasonable and without foundation. Texas Rural Legal Aid, Inc. (TRLA) appeals the award of attorney's fees against it for what the court found was an abuse of legal process. Careful review of the record leads us to conclude that summary judgment was inappropriate on the facts before the district court, and that Trevino's suit was neither frivolous, unreasonable, baseless, nor an abuse of legal process. Accordingly, we reverse and remand for a new trial, and vacate the award of attorney's fees against both Trevino and TRLA.

I. FACTS AND DISPOSITION BELOW

Trevino, a forty-two-year-old Mexican-American, was employed by ABI intermittently from 1970 to 1975 at Celanese's chemical plant in Bishop, Texas, and has been steadily employed by ABI since then. Celanese is a major chemical manufacturer.

ABI is a Texas corporation that provides maintenance and operating employees to Celanese. Historically, ABI personnel have transferred in significant numbers to the regular Celanese workforce. At the time Trevino initiated suit, 20%–25% of the regular Celanese workforce was composed of former ABI personnel. Because Celanese offered greater job security and opportunity for promotion than ABI, Trevino began making applications for employment with it as early as 1972, and continued to do so from time to time until shortly before suit was filed. All of his efforts to obtain employment with Celanese proved futile, however.

On May 23, 1975, following another in a series of lay-offs by ABI, Trevino and a number of other Mexican-American employees filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC). The charge alleged discrimination by ABI on the basis of national origin with regard to hiring, discharge, lay-off, recall, assignments, recruitment, training, promotion, wages, seniority and fringe benefits. As a basis for these allegations, the charge cited the frequency with which the Mexican-American employees were being laid off, while Anglo employees originally hired by ABI were apparently protected from lay-offs by means of lateral transfers to Celanese. After filing the charge and discussing the matter with several lawyers in private practice, plaintiffs were referred to the Kingsville, Texas office of TRLA, which undertook to represent them. After receiving notice of right to sue from the EEOC, the group filed a class action in the district court in October, 1976 against ABI, alleging a systemic pattern and practice of employment discrimination on the basis of national origin in violation of Title VII, 42 U.S.C. § 2000 *et seq. See Mireles v. Arthur Brothers, Inc.,* No. C–76–134 (S.D. Tex. filed Oct. 28, 1976).[2]

---

1. Celanese Chemical Company is a subsidiary of Celanese Corporation. The two are indistinguishable for the purposes of this litigation, and in the interests of simplicity shall be referred to jointly as "Celanese."

2. The instant case is one of four related cases, all based on claims of employment discrimination resulting from employment practices and policies at Celanese's Bishop, Texas plant. The

Extensive discovery in the *Mireles* litigation revealed that ABI had not been acting alone in its employment decisions regarding ABI workers. It appears that Celanese managers and supervisors on numerous occasions authorized lay-offs, recalls, promotions and transfers of ABI employees to Celanese. The record in this case contains over one hundred personnel documents cataloguing the promotions and pay increases of ABI employees which bear the signatures of various Celanese managers purportedly acting as "General Foreman" or "Foreman" for ABI.[3]

While discovery in *Mireles* went forward, Trevino continued his efforts to obtain employment with Celanese. On one occasion, he was told by Celanese that his application had been denied because his brother worked for Celanese, and the company "had a policy where relatives couldn't work for Celanese." However, Trevino soon learned that related Anglos did in fact work for Celanese, and began to suspect that the "no relative" policy cited to justify the denial of his job application was merely an excuse for not hiring him.

In light of these developments, Trevino and his counsel, TRLA, took two actions in the fall of 1979. On October 15, 1979 they filed a motion pursuant to Rule 19(a) to join Celanese as a party defendant in the *Mireles* case, in which Trevino was one of the named plaintiffs. Then, on November 4, 1979, Trevino filed with the EEOC a second charge of employment discrimination, naming both ABI and Celanese as respondents. This charge alleged in general terms a continuing violation of Trevino's Title VII rights by ABI and Celanese under their shared promotion and transfer system. The charge also alleged that Celanese had retaliated against Trevino for his having filed a previous charge with the EEOC against ABI.

On November 6, 1979, the EEOC received Trevino's charge, the *Mireles* court denied the joinder of Celanese as a party defendant in the *Mireles* suit, and Trevino filed an application with Celanese for a job as a boilermaker. Celanese had had no openings in this position for several years. TRLA neither reviewed this application, nor assisted in its preparation. Celanese apparently never acted on this application. The EEOC issued its notices as to Celanese and ABI on January 31, 1980 and April 1, 1980, respectively. The present suit was filed as a class action on April 30, 1980. At the time he filed his complaint, Trevino moved to consolidate the case with *Mireles.*

In his complaint, Trevino made no mention of his most recent unsuccessful job application, but instead alleged, on behalf of himself and the class of all Mexican-American workers similarly situated, a con-

others are *Gonzales v. Arthur Brothers, Inc.,* No. C–80–48 (S.D.Tex. filed Apr. 30, 1980); *Guerra v. Celanese Corporation, Celanese Chemical and Arthur Brothers, Inc.,* No. C–80–115 (S.D.Tex. filed Aug. 23, 1980); and the *Mireles* case noted above. The plaintiffs in *Mireles* are Eulogio Mireles, Francisco Gonzales, Bartolo Mendiola, and Israel Trevino. With the exception of Trevino, these are all plaintiffs in *Gonzales* as well. Trevino is the only named plaintiff in the instant case, and Guerra is the only plaintiff in the case bearing his name.

**3.** Additionally, former ABI supervisor Angel Gonzales testified that he always considered Celanese to be his "boss." Former ABI supervisor Donald Van Schuette testified that it was common practice for Celanese management to call ABI in order to secure employment for their friends and relatives. He also testified that preference was given mostly to children of Celanese personnel, and that ABI would consider regular employment applications only after these relatives had been hired. According to Van Schuette, Celanese-referred friends and relatives were also accorded preferred treatment in promotion decisions after they were hired by ABI. Van Schuette and ABI employee Oscar Guerra both testified that the decision to lay off an ABI employee depended upon whether he had a relative or close friend on the Celanese staff. When Guerra asked why he had been laid off while an Anglo co-worker who had been hired only three weeks earlier was retained, he was told by ABI that the Anglo worker's father-in-law worked for Celanese. The Anglo in question corroborated this by telling Guerra that "they have to give me a job so I can support his daughter."

tinuing pattern and practice of discrimination by Celanese and ABI.[4]

In response to Trevino's discovery requests, Celanese filed a motion for a protective order on June 18, 1980, asking that the court limit discovery to the two year period preceding the filing of this suit in order to spare Celanese undue expense. The court on June 20, 1980 granted the motion. In its order, the court limited the scope of discovery both by restricting the relevant time frame to the two year period preceding the initiation of this action and by prohibiting access to documents relevant to the existence of a joint Celanese-ABI promotion system governing transfers from ABI to Celanese.

On August 1, 1980, the court denied Trevino's motion to consolidate this case with *Mireles*.[5] Finally, on December 15, 1980, the court granted summary judgment for Celanese. Narrowing its focus to Trevino's most recent job application, the court chose to view Trevino's action as a simple failure-to-hire claim, and under that theory quite

properly determined that Trevino had failed to make out the elements of a prima facie case. Having narrowly circumscribed the scope of discovery, the court did not address Trevino's challenge to the joint Celanese-ABI promotion procedures alleged in the complaint as a continuing violation of his Title VII rights. The court further held that there was no genuine issue of material fact with respect to the claim that Celanese and ABI were joint employers, or that they operated an integrated business or enterprise. A similar order granting summary judgment for ABI was entered on January 12, 1981. At the same time, and by a separate order, the court dismissed all claims raised by Trevino on behalf of the class he claimed to represent.

Trevino then filed a motion to vacate the summary judgments, supported by numerous records and documents obtained in the related *Mireles* litigation that showed Celanese's involvement in ABI personnel decisions. The court denied the motion and entered final judgment for Celanese and ABI on October 20, 1981. In its order, the

---

**4.** We have set out the relevant portions of the complaint below.

STATEMENT OF THE CASE

10. Defendant Celanese and Defendant Arthur Brothers conduct integrated business activities at the Celanese facility at Bishop, Texas, and as such at all times relevant hereto have acted as joint or multiple employers or a joint enterprise, and together maintain and have maintained policies which, although neutral in appearance, adversely affect equal employment opportunities for Hispanic workers because of their race/national origin.

The policies include the following:

a. Defendant Celanese's policy is to employ workers who are nominally employed by Arthur Brothers to perform jobs of a lower skill level thereby limiting access by Hispanic [sic] to such jobs with Celanese;

b. Defendant Celanese's policy as described in subparagraph "a," supra, severely limits post-employment promotional opportunities for Hispanic workers because it severely limits the internal availability of Hispanic workers for promotion and training purposes; and,

c. Defendant Celanese historically has demonstrated that it gives hiring preferences to Arthur Brothers employees who have relatives already working with Celanese; this policy of nepotism limits em-

ployment opportunities for Hispanic applicants and potential applicants.

11. The Defendants treat Hispanic workers and applicants differently because of their race/national origin and because of this employment opportunities for Hispanic workers are limited in ways which include the following:

a. Hiring;

b. Promotion;

c. Termination;

12. After having asserted his rights under Title VII by opposing practices he perceived to be unlawful thereunder and by participating in investigations conducted by the Commission, Defendants became aware of such conduct, and have considered same as a factor in their decision not to hire or promote him into the ranks of Celanese workers at the Bishop facility, all in violation of Section 704(a) of Title VII.

Section 12 of the complaint constitutes a separate charge of retaliation by defendants for Trevino's participation in the *Mireles* case.

**5.** Shortly before the court issued its final judgment, TRLA withdrew as counsel for Trevino in this case in compliance with the provisions of 45 C.F.R. § 1611.7, governing the case of a client who, although originally eligible for legal services, subsequently becomes ineligible due to a change in his financial situation.

court awarded defendants $24,541 in attorney's fees, ten percent to be paid by Trevino, and ninety percent by TRLA. The court concluded that since there were no openings in the position for which Trevino had applied, his claim was frivolous. The court further determined that TRLA had set about fabricating the *Trevino* suit solely to circumvent the court's previous order denying consolidation of this case with the *Mireles* case, and concluded that this amounted to nothing less than an abuse of legal process.

## II. ANALYSIS

On appeal, Trevino contends that the district court failed to consider the legal theory under which he sought to recover. The court early on in the litigation evinced its reluctance to entertain the notion of a continuing pattern of discrimination by means of a post-employment promotion and selection system. The court's protective order of June 20, 1980 reflects its view that the case merely involved a failure to hire. We must therefore begin our inquiry by ascertaining whether the theory upon which Trevino sought to proceed was a valid one.

### A. *Continuing Violation*

This Court has consistently recognized racial discrimination in promotion and transfer as a continuing violation of Title VII. *Fisher v. Procter & Gamble Manufacturing Company,* 613 F.2d 527 (5th Cir.1980), cert. denied, 449 U.S. 1115, 101 S.Ct. 929, 66 L.Ed.2d 845 (1981); *Clark v. Olinkraft, Incorporated,* 556 F.2d 1219 (5th Cir.1977), cert. denied, 434 U.S. 1069, 98 S.Ct. 1251, 55 L.Ed.2d 772 (1978); *Belt v. Johnson Motor Lines, Incorporated,* 458 F.2d 443 (5th Cir. 1972).[6]

In *Clark,* a case much like the present one, we pointed out that though a failure to hire may not be a continuing violation, a failure to *promote* is readily distinguishable from a failure to hire.

Quoting with approval from *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 348 (10th Cir. 1975), we said:

> We finally must take up the factor of timing. The court found that in some instances there were no openings in positions for which the plaintiffs were qualified within the 90 days [now 180 days] prior to the filing of charges with the EEOC. The court apparently read *McDonnell-Douglas* [*McDonnell-Douglas v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] as saying that if an employer has employed no one during the 90 days [now 180 days] preceding the filing of charges with the EEOC, it is impossible to have an unlawful employment practice committed within the time limitations of 42 U.S.C. § 2000e–5(e).
>
> This is in relation to the *McDonnell-Douglas* criterion requiring that plaintiff show that he applied for a job for which the employer was seeking applicants. *Clearly this applies to new employment and is different from an employee who is seeking promotion. The former takes place on a particular day, whereas in the promotion area it invariably arises during a lengthy period of time. Plaintiffs here challenge the entire promotion system maintaining that it continually operated so as to hold them in lower echelons. Hence, the 90 day period [now 180 days] period [sic] prior to the filing of the EEOC charges looms inconsequential in this kind of case.* If proven, these charges of discriminatory refusal to promote would be violative of 42 U.S.C. § 2000e–5.

*Id.* (Emphasis in original). Although the issue in *Clark* was whether plaintiff's action was barred by the applicable statute of limitations, the decision in that case makes clear that discriminatory failure to promote represents an actionable, continuing viola-

---

**6.** For instances in which other circuits have recognized this action, *see, e.g., EEOC v. Western Publishing Co.* 502 F.2d 599, 603 (8th Cir. 1974); *Macklin v. Spector Freight Systems,* 478 F.2d 979, 987 (D.C.App.1973); *Bartmess v.* *Drewrys U.S.A., Inc.,* 444 F.2d 1186, 1188 (7th Cir.), cert. denied 404 U.S. 939, 92 S.Ct. 274, 30 L.Ed.2d 252 (1971); *Cox v. United States Gypsum Co.,* 409 F.2d 289, 290 (7th Cir.1969).

tion of Title VII under the jurisprudence of this Circuit.[7]

In order to demonstrate that Celanese's persistent refusal to transfer him out of the ranks of ABI amounted to actionable failure to promote, Trevino must first demonstrate that ABI and Celanese acted jointly as employers with respect to him, and to those he purports to represent. Otherwise, the alleged failure to promote is reduced to Celanese's failure to hire him—a nonactionable claim on the facts before us.

Ordinarily, promotion is perceived as occurring within a single company or organization. It is clear, however, that an employee may also be promoted, or denied promotion, from one to another nominally independent entity, provided these two entities' activities, operations, ownership or management are sufficiently interrelated. Whether transfer from one workforce to another constitutes a "promotion" or a "hiring" depends on the facts of each particular case; however, the degree of interrelatedness between companies required before an employee will be considered to have been "promoted" as he transfers from one to the next cannot reasonably be said to exceed that degree of connexity which the courts require for a finding of joint employer or integrated enterprise status.

The term "employer" as used in Title VII of the Civil Rights Act was meant to be liberally construed.[8] *Baker v. Stuart Broadcasting Co.*, 560 F.2d 389, 391 (8th Cir.1977); *Sibley Memorial Hospital v. Wilson*, 488 F.2d 1338 (D.C.Cir.1973). Over the past decade, numerous courts have drawn upon theories and rules developed in the related area of labor relations in determining when separate business entities are sufficiently interrelated for an employee whose Title VII rights have been violated to file a charge against both entities.[9] Thus

---

**7.** There is, however, one significant limitation on an action for failure to promote. Under *United Air Lines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977) and *International Brotherhood of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977), the mere perpetuation of the *effects* of time-barred discrimination does not constitute a violation of Title VII in the absence of independent actionable conduct occurring within the statutory period. As the Supreme Court noted in *Evans:*

> A discriminatory act which is not made the basis for a timely charge is the legal equivalent of a discriminatory act which occurred before the statute was passed. *It may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue, but separately considered,* it is merely an unfortunate event in history which has no present legal consequences.

*Evans,* 431 U.S. 558, 97 S.Ct. at 1889 (emphasis added); *see Fisher,* 613 F.2d at 540. *See also Delaware State College v. Ricks,* 449 U.S. 250, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980); *cf. Rubin v. O'Koren,* 644 F.2d 1023 (5th Cir.1981). This does not mean, however, that a continuing violation can never constitute an actionable wrong; nonfrivolous allegations of the present existence of discriminatory practices in promotion or transfer clearly fall without the proscription of *Evans.* The persistence of a system of promotion and transfer which experience has shown to be animated by a spirit of unlawful discrimination constitutes a continuing violation of Title VII.

**8.** The term "employer" is defined in the Act as follows:

> (b) The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person, but such term does not include (1) the United States, a corporation wholly owned by the Government of the United States, an Indian tribe, or any department or agency of the District of Columbia subject by statute to procedures of the competitive service (as defined in section 2102 of Title 5), or (2) a bona fide private membership club (other than a labor organization) which is exempt from taxation under section 501(c) of Title 26, except that during the first year after March 24, 1972, persons having fewer than twenty-five employees (and their agents) shall not be considered employers.

42 U.S.C.A. 2000e(b) (1981).

**9.** *See, e.g., Woodford v. Kinney Shoe Corp.,* 369 F.Supp. 911, 917 (N.D.Ga.1973); *United States v. Local 638, Enterprise Ass'n,* 360 F.Supp. 979, 995 (S.D.N.Y.1973), *modified* 501 F.2d 622 (2d Cir.1974); *United States v. Jacksonville Terminal Co.,* 351 F.Supp. 452, 454 (M.D.Fla.1972), *aff'd in part, rev'd in part on other grounds and remanded,* 451 F.2d 418 (5th Cir.1971); *Williams v. New Orleans Steamship Ass'n,* 341 F.Supp. 613, 615 (E.D.La.1972), *aff'd in part, rev'd in part on other grounds and remanded,* 673 F.2d 742 (5th Cir.1982). The

the rule has emerged that superficially distinct entities may be exposed to liability upon a finding that they represent a single, integrated enterprise: a single employer. Factors considered in determining whether distinct entities constitute an integrated enterprise are (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control.[10]

Courts applying this four-part standard in Title VII and related cases have focused on the second factor: centralized control of labor relations. *Oaks v. City of Fairhope,* 515 F.Supp. 1004 (S.D.Ala.1981); *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 727 (N.D. Ala.1981); *EEOC v. Cuzzens of Georgia,* 15 FEP 1807 (N.D.Ga.1977), *rev'd on other grounds,* 608 F.2d 1062 (5th Cir.1979). This criterion has been further refined to the point that "[t]he critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?" *Odriozola v. Superior Cosmetic Distributors, Inc.,* 531 F.Supp. 1070, 1076 (D.P. R.1982).

The record in this case contains conflicting testimony on this question. Celanese plant manager Paul Hime testified that Celanese had no control over ABI's employment practices and decisions. His testimony was substantiated by that of Norman Coulter, senior ABI superintendent at the Bishop facility, and Larry Smith, ABI owner and vice-president. However, the record also contains testimony showing that Celanese exercised considerable control over ABI employees. Former ABI employees testified that they considered themselves *de facto* employees of Celanese, that Celanese management "placed" their own relatives in positions at ABI, and that having a connection among Celanese staff served to protect some ABI employees against lay-offs. The record also contains numerous ABI personnel documents bearing the signatures of Celanese managers.[11]

We need not speculate as to the quality or quantity of additional information showing Celanese control over ABI employees that Trevino might have obtained had full discovery been permitted in this case. (*See* Part B *infra*). The district court in its memorandum and order makes no mention of the record evidence detailed above. This evidence clearly raises a genuine issue of material fact as to Celanese's employer status. While it would be premature on the basis of the record before us to decide that Celanese and ABI constitute a single employer for the purposes of this action, the facts do not clearly indicate that Trevino cannot under any discernible cir-

---

rules developed by the NLRB for determining when two or more employers may be treated as one have also been extended to determinations of single employer status in actions brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–34, a statute patterned after Title VII. *See, e.g., York v. Tennessee Crushed Stone Ass'n,* 684 F.2d 360, 362 (6th Cir.1982); *Marshall v. Arlene Knitwear, Inc.,* 454 F.Supp. 715 (E.D.N.Y.1978), *aff'd in part, rev'd in part and remanded,* 608 F.2d 1369 (2d Cir.1979).

**10.** *Baker v. Stuart Broadcasting Co.,* 560 F.2d 389, 391–92 (8th Cir.1977); *Fike v. Gold Kist, Inc.,* 514 F.Supp. 722, 725–28 (N.D.Ala.1981); *Carter v. Shop Rite Foods, Inc.,* 470 F.Supp. 1150, 1160 (N.D.Tex.1979); *EEOC v. Upjohn Corp.,* 445 F.Supp. 635, 638–39 (N.D.Ga.1977); *Williams v. New Orleans Steamship Ass'n,* 341 F.Supp. 613 (E.D.La.1972), *aff'd in part, rev'd in part on other grounds and remanded,* 673 F.2d 742 (5th Cir.1982). These four factors were first adopted by the Supreme Court for application in the area of labor relations in *Radio Union v. Broadcast Serv. of Mobile, Inc.,* 380 U.S. 255, 257, 85 S.Ct. 876, 877, 13 L.Ed.2d 789 (1965).

Although we declined to apply the integrated enterprise standard in *Dumas v. Town of Mt. Vernon,* 612 F.2d 974, 979 n. 9 (5th Cir.1980), that case is readily distinguishable on its facts. Plaintiffs in *Dumas* sought under the four-part standard to integrate the Town of Mt. Vernon with either the county, or the state. As articulated, the standard is not readily applicable to governmental subdivisions, for it was "developed by the National Labor Relations Board to determine whether consolidation of separate *private* corporations is proper in determining the relevant employer for purposes of enforcing the National Labor Relations Act." *Owens v. Rush,* 636 F.2d 283, 286 n. 2 (10th Cir.1980) (emphasis in original).

**11.** *See* note 3 *supra* & accompanying text.

cumstance prove single employer status. *Everhart v. Drake Management, Inc.,* 627 F.2d 686, 690 (5th Cir.1980). We therefore reverse the district court's grants of summary judgment to Celanese and ABI on the issue of single employer status.

Returning to our initial inquiry, the complaint filed in this case plainly alleges that: (1) Celanese and ABI are either joint employers or an integrated business enterprise, and (2) the two companies acted in concert in a number of ways to limit the post-employment promotional opportunities of Trevino and his Mexican-American fellow-workers. The fact that the complaint also alleges discrimination in hiring and firing does not automatically convert this into a mere failure-to-hire case.

■ It is evident from the foregoing discussion that, regardless of the merits of his claim, the legal theory upon which Trevino sought to recover was a valid one. Two or more closely linked entities may combine to deprive an employee of his Title VII rights in matters of promotion, just as they may discriminate in the areas of hiring, firing, lay-offs and seniority. Trevino should be accorded a full and fair opportunity to develop his case under this theory.

### B. *Protective Order*

■ As noted above, the district court's protective order was conditioned by the court's perception of this action as a challenge to Celanese's failure to hire Trevino. This order limited discovery to the two year period preceding the filing of this suit, and further restricted it to noncommercial and nonproprietary information or data relative to the Bishop, Texas plant only. More tellingly, the court's protective order barred discovery into the following areas: (1) internal organization of Celanese management structure, along with the identity of persons occupying management positions since 1965; (2) identifying characteristics of Celanese's computer facilities; (3) descrip-

tions of documents or types of documents in Celanese's personnel recordkeeping system since 1965, along with identities of persons or management units initiating and reviewing such documents; and (4) Celanese's purging policies and procedures for internal personnel records. While some of this information might be of questionable relevance to a simple action for failure to hire, much of it would be highly relevant in proving a continuing pattern of discrimination in an integrated enterprise's promotion and transfer system. The fact that some of the information sought concerns events occurring outside the prescriptive limit for actionable claims is not a bar in light of the Supreme Court's observation that "[a] discriminatory act which is not made the basis for a timely charge ... may constitute relevant background evidence in a proceeding in which the status of a current practice is at issue." *Evans,* 431 U.S. at 558, 97 S.Ct. at 1889.[12]

Rule 1 of the Federal Rules of Civil Procedure directs that the rules "shall be construed to secure the *just,* speedy, and inexpensive determination of *every* action." (Emphasis added.) "There probably is no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted. The primary purpose of procedural rules is to promote the ends of justice." 4 C. Wright and A. Miller, Federal Practice and Procedure § 1029 (1969). The Supreme Court of the United States has stated that these rules "are to be accorded a broad and liberal treatment." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947); *Schlagenhauf v. Holder,* 379 U.S. 104, 114–15, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964).

■ The imposition of unnecessary limitations on discovery is especially frowned upon in Title VII cases.

---

12. *See* footnote 6, *supra. See also Fisher v. Procter & Gamble Mfg. Co.,* 613 F.2d 527, 540–42 (5th Cir.1980), in which we held that the district court did not err in admitting evidence of past discriminatory acts in Title VII class actions challenging broad, established practices and policies.

... Because discovery matters are committed almost exclusively to the sound discretion of the trial Judge, appellate rulings delineating the bounds of discovery under the Rules are rare. But the Judge's discovery rulings, like his other procedural determinations, are not entirely sacrosanct. If he fails to adhere to the liberal spirit of the Rules, we must reverse. See *Wallin v. Fuller and Nationwide Mutual Insurance Co.,* 5 Cir.1973, 476 F.2d 1204 [1973]. And this is especially true in Title VII cases where courts have refused to allow procedural technicalities to impede the full vindication of guaranteed rights. *Sanchez v. Standard Brands, Inc.,* 5 Cir.1970, 431 F.2d 455, 461.

*Burns v. Thiokol Chemical Corporation,* 483 F.2d 300, 304–05 (5th Cir.1973). *See Eastland v. Tennessee Valley Authority,* 553 F.2d 364, 370 (5th Cir.1977), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977). "It is plain that the scope of discovery through interrogatories and requests for production of documents is limited only by relevance and burdensomeness, and in an EEOC case the discovery scope is extensive." *Rich v. Martin Marietta Corporation,* 522 F.2d 333, 343 (10th Cir.1975).[13] Since "[a]ny information relevant—in a discovery sense—to an EEOC investigation is likewise relevant to the private attorney-general, either in his individual role or in his capacity as the claimed representative of a class," *Thiokol,* 483 F.2d at 305, it is clear that the scope of allowable discovery in the instant case should have been considerably broader than it was. Trevino was effectively hamstrung by the district court's order limiting discovery. The great bulk of information bearing on the nature of the relationship between Celanese and ABI, and Celanese and ABI's promotion and transfer system, was unearthed in the related *Mireles* litigation, and is only before this Court as a result of its inclusion in the record in support of Trevino's motion to vacate summary judgment.[14]

██ The trial judge declined to state any reasons for his order limiting the scope of discovery. We have found no sound reason for this sweeping restriction, and must conclude that the trial judge overstepped the bounds of discretion in limiting discovery as he did. Accordingly we vacate the protective order limiting discovery.[15]

### C. *Summary Judgment*

As previously noted, the district court read Trevino's complaint to allege no more than a simple failure-to-hire. When those facts ascertained under the court's limited discovery order failed to fit this particular Procrustean bed, the court concluded that Trevino and Trevino's lawyers were wasting its time, entered summary judgment against Trevino, and awarded attorney's fees to Celanese and ABI. Trevino, however, never made the bed in which he was told to lie, and should not be asked to pay for it.

██ Under Federal Rule of Civil Procedure 56, summary judgment is appropriate only where everything in the record—plead-

---

**13.** *Cf. EEOC v. Packard Electric Division, General Motors Corporation,* 569 F.2d 315 (5th Cir. 1978), in which we found no clear error in the district court's refusal to fully enforce broad EEOC investigative subpoenas of facility-wide "workforce break-outs." The discriminatory acts alleged in that case, which were both distinct, limited in nature, and few in number, justified a somewhat more limited scope of discovery under 42 U.S.C. § 2000e–8 than that properly sought under F.R.C.P. 23 in the present case.

**14.** Any doubt that these depositions and personnel records are properly before us is dispelled by the plain language of F.R.App.Pro. 10(a), which provides:

> 10(a) *Composition of the Record on Appeal.* The original papers and exhibits filed in the district court, the transcript of proceedings, if any, and a certified copy of the docket entries prepared by the clerk of the district court shall constitute the record on appeal in all cases.

These documents in question were all filed with the district court.

**15.** Should the discovery Trevino seeks on remand prove unduly expensive and burdensome, defendants may request an *appropriate* order limiting discovery.

ings, depositions, interrogatories, affidavits, etc.—demonstrates the absence of any genuine issue of material fact. *Erco Industries Limited v. Seaboard Coastline Railroad Company,* 644 F.2d 424 (5th Cir.1981). In considering whether to grant a motion for summary judgment, the court must view the evidence in the light most favorable to the party resisting the motion. *Joplin v. Bias,* 631 F.2d 1235, 1237 (5th Cir.1980). "Ordinarily, summary disposition of Title VII cases is not favored, especially on a 'potentially inadequate factual presentation.'" *Jones v. Western Geophysical Company of America,* 669 F.2d 280, 283 (5th Cir.1982) (*quoting Logan v. General Fireproofing Co.,* 521 F.2d 881, 883 (4th Cir. 1971)). *See Equal Employment Opportunity Commission v. Southwest Texas Methodist Hospital,* 606 F.2d 63, 65 (5th Cir.1979), *cert. denied,* 445 U.S. 928, 100 S.Ct. 1314, 63 L.Ed.2d 761 (1980); *Hayden v. First National Bank of Mt. Pleasant, Texas,* 595 F.2d 994, 997 (5th Cir.1979). The district court may normally grant summary judgment "only when the moving party has established his right to judgment with such clarity that the nonmoving party cannot recover ... under any discernible circumstance." *Everhart v. Drake Management, Inc.,* 627 F.2d 686, 690 (5th Cir.1980). Where, as here, a court simply declines to entertain the theory of recovery advanced by plaintiff, its determination that there exists no genuine issue of material fact under the theory it applies cannot be supposed to extend to facts material under the rejected theory. We reverse the district court's award of summary judgment not because the court decided factual issues properly reserved for trial, but because it failed to determine that there was no genuine issue of fact material to the action pleaded and argued by plaintiff.

## D. *Attorney's Fees*

■ The district court awarded attorney's fees against Trevino because it found his cause of action "frivolous, unreasonable or without foundation, even though not brought in bad faith." *Christiansburg Garment Company v. Equal Employment Op-* *portunity Commission,* 434 U.S. 412, 421, 98 S.Ct. 694, 700, 54 L.Ed.2d 648 (1978). A necessary consequence of our decision that summary judgment was improper in this case is that Trevino's action was neither frivolous, unreasonable, nor baseless. Similarly, since Trevino's action was not one for failure-to-hire, TRLA could not have abused the legal process by fabricating that nonexistent cause of action. Accordingly we vacate the court's award of attorney's fees as against both Trevino and TRLA.

## E. *Class Action Issues*

Citing *East Texas Motor Freight System, Incorporated v. Rodriguez,* 431 U.S. 395, 97 S.Ct. 1891, 52 L.Ed.2d 453, the court below dismissed the class allegations in this cause. In *Rodriguez,* a failure-to-hire case, the district court found upon abundant evidence that the members of the class plaintiff sought to represent were unqualified for the positions for which they applied. *Id.,* 97 S.Ct., at 1897. Here, however, the district court made no finding that the members of the class represented by Trevino were ineligible for promotion.

Class actions are generally appropriate in Title VII employment discrimination cases. The reason for this is that although these suits are self-help, so to speak, actions, they also have a broad public interest in that they seek to enforce fundamental constitutional principles as well as to advance the rights of the individual plaintiffs who bring the action.

*Rich v. Martin Marietta Corporation,* 522 F.2d 333, 340 (10th Cir.1975) (citations omitted). Here, decertification followed naturally as a consequence of summary judgment. Having determined that summary judgment was improper, and that *Rodriguez* does not support decertification on the limited facts before us, we accordingly vacate the court's dismissal of the class allegations in this action.

## F. *Consolidation*

Although the order denying Trevino's motion to consolidate this action with *Mi-*

*reles* predates the award of summary judgment, it follows the protective order issued by the court in the mistaken belief that this case involved nothing more than Celanese's failure to hire Trevino. We need not consider whether the court was correct in denying the motion to consolidate a failure-to-hire case with *Mireles;* it clearly never considered Trevino's motion to consolidate a continuing failure-to-promote case with *Mireles.* Its denial of the motion to consolidate must therefore be vacated.

Accordingly, we VACATE the protective order, the dismissal of class allegations, and the denial of the motion to consolidate; REVERSE the grants of summary judgment and the awards of attorney's fees, and REMAND for further proceedings consistent with this opinion.