**Mario QUINTANILLA**

v.

**K–BIN, INC., Shintech, Inc., and N.F. Giannone, M.D.**

**Civil Action No. G–97–608.**

United States District Court, S.D. Texas, Galveston Division.

June 23, 1998.

David A. Jameson, Galveston, TX, for David Jameson.

David T. Lopez, David Lopez & Associates, Houston, TX, for Mario NMI Quintanilla.

G. Mark Jodon, Ogletree, Deakins, Nash, Smoak & Stewart, Houston, TX, Ervin A. Apffel, Jr., McLeod Alexander, Galveston, TX, for K–Bin, Inc., Shintech, Inc., N F Giannone, M.D.

## ORDER REGARDING SUMMARY JUDGMENT

KENT, District Judge.

In this action, Plaintiff Mario Quintanilla asserts claims of race discrimination, national origin discrimination, false light invasion of privacy, negligence and gross negligence, and intentional infliction of emotional distress. Now before the Court are the Motions for Summary Judgment of Defendants K–Bin and Shintech, filed May 18, 1998, and of Defendant Giannone, filed May 5, 1998. By Order entered February 2, 1998, the Court dismissed Plaintiff's claims of false light invasion of privacy, negligence and gross negligence, and intentional infliction of emotional distress against Defendants K–Bin and Shintech, and *sua sponte* dismissed Plaintiff's claims of false light invasion of privacy and intentional infliction of emotional distress against Defendant Giannone. Defendants K–Bin and Shintech now move for summary judgment on Plaintiff's claims of race discrimination and national origin discrimination under Title VII and race discrimination under 42 U.S.C. § 1981, and Defendant Giannone moves for summary judgment on the only claim remaining against him, negligence. For the reasons stated below, Dr. Giannone's Motion for Summary Judgment is **GRANTED,** and K–Bin and Shintech's Motion for Summary Judgment is **DENIED**.

## I. FACTUAL BACKGROUND

Plaintiff, a Hispanic male, was employed by Defendant K–Bin as a process development technician supervisor in K–Bin's Research and Development Department, located within Shintech's Freeport, Texas manufacturing complex. In accordance with K–Bin's regular policy and practice of periodically testing its employees for the use of illegal controlled substances, Quintanilla was randomly tested on or about May 21, 1996. The test result came out positive for a cocaine metabolite.

Upon being informed of the positive result, Quintanilla immediately informed his supervisor that he suspected the result was due to an herbal tea called "Te Nervioso" that he had purchased in Mexico. Quintanilla also informed the Medical Review Officer ("MRO"), Dr. Giannone, who was hired to investigate the positive test result, that he suspected the tea was the cause of the positive result. Giannone questioned Plaintiff about possible medical reasons for the presence of cocaine metabolite, and determined that there were none. Giannone did not test the tea samples that Plaintiff provided. Upon determining that there was no medical explanation for Plaintiff's result, Giannone forwarded his report indicating such to Quin-

tanilla and Shintech. Shortly thereafter, Quintanilla was terminated for violating company policy.

Plaintiff alleges that after he was fired, his former employer rejected his offer to have the teas tested by a laboratory, and that even after testing by an independent laboratory confirmed that the tea would produce a "minute" quantity of cocaine metabolite, the company steadfastly refused to reinstate Quintanilla. He also asserts that similarly situated white males, who were known by K–Bin and Shintech to be users of controlled substances, were not terminated immediately, but were given a chance to rehabilitate. Therefore, Plaintiff alleges that his employers illegally discriminated against him because of his race or national origin.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. *See* FED. R. CIV. P. 56. Rule 56(e) requires that when a motion for summary judgment is made, the nonmoving party must set forth set forth specific facts showing that there is a genuine issue for trial. *Id.; see Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). The mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. at 2510. "That the movant appears more likely to prevail at trial is no reason to grant summary judgment; it is not the province of the court on a motion for summary judgment to weigh the evidence, assess its probative value, or decide factual issues." *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 87 (5th Cir.1982). If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *Id.; see also Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

## III. DEFENDANT GIANNONE'S MOTION FOR SUMMARY JUDGMENT

To plead a claim for negligence, Plaintiff must show a legal duty, breach of that duty, and damages proximately caused by the breach. *El Chico Corp. v. Poole,* 732 S.W.2d 306, 311 (Tex.1987). The only issue that must be considered in Giannone's Motion for Summary Judgment is whether Dr. Giannone owed a legal duty to Plaintiff to test the tea for cocaine. In making this enquiry, the Court must consider "several interrelated factors, including the risk, foreseeability, and likelihood of injury weighed against the social utility of the actor's conduct, the magnitude of the burden of guarding against the injury, and the consequences of placing the burden on the defendant." *Greater Houston Transp. Co. v. Phillips,* 801 S.W.2d 523, 525 (Tex.1990).

▪ Plaintiff argues that Giannone had a duty to test the tea after Plaintiff informed him that he suspected the tea had caused the positive result, and after Giannone brought up the idea of having the tea tested. According to Plaintiff, "[o]nce having entered into a course of conduct which could avoid the harm to Mr. Quintanilla, Dr. Giannone assumed a duty not to act in any way which would frustrate the effort or worsen the situation." Plaintiff is correct in that there is at common law a rule that imposes liability for injuries caused by the negligent performance of a gratuitous undertaking. *See Colonial Sav. Ass'n v. Taylor,* 544 S.W.2d 116, 120 (Tex. 1976). However, a person generally is under no legal duty to come to the aid of another in distress, and is only under a duty to avoid any affirmative act which might worsen the situation. *See Otis Engineering Corp. v. Clark,* 668 S.W.2d 307, 309 (Tex.1983).

▪ Even assuming that Giannone's testing of the tea would have helped Plaintiff,[1] in this case Plaintiff has failed to show by com-

---

1. Whether it would have prevented Plaintiff's alleged damages is doubtful. *See infra* note 2 and   accompanying text.

petent summary judgment evidence that Giannone voluntarily agreed to test the tea for Plaintiff. If Giannone did not voluntarily agree to do so, then he had no affirmative duty under the reasoning advanced by Plaintiff to do any affirmative act, other than those required of him as a MRO. Moreover, the evidence shows that Giannone's duties, under his agreement with Shintech and K–Bin, were only to determine whether there was a *medical* reason for the positive drug result, such as prescription medication. This duty is consistent with the legal duties of MROs under federal drug testing programs. *See, e.g.,* 49 C.F.R. § 199.15(c) (duties of a MRO reviewing drug test results for DOT gas pipeline workers include only verifying accuracy of drug test and determining whether there is any medical reason, *e.g.* prescription medication, for a positive drug test result). In fact, Plaintiff himself has submitted the letter of a medical consultant who concluded that Dr. Giannone had no independent duty to test the tea, and that he did all that was required of him as a MRO.

Plaintiff cites to no authority which would require a MRO to investigate every possible reason that a test subject may advance to explain a positive drug test result, and the Court is persuaded by Giannone's argument that imposing such a duty on MROs would "create[ ] a situation where the scope of a MRO's duties is limited only by the scope of [a] plaintiff's imagination as to what caused the positive test result."

Finally, Plaintiff has failed to show causation and damages. The record shows that Plaintiff did have the tea tested by an independent laboratory, and submitted the results to K–Bin, showing that the tea contained trace amounts of cocaine. However, Plaintiff's employer refused to reinstate him. Therefore, Plaintiff has not shown that Giannone's action caused him any damages; the record shows that K–Bin would have terminated Plaintiff anyway.[2] Therefore, the Court finds that Dr. Giannone was under no legal duty to test the tea. Accordingly, Gian-

none's Motion for Summary Judgment is **GRANTED**, and all claims against such Defendant are **DISMISSED WITH PREJUDICE.**

## IV. K–BIN AND SHINTECH'S MOTION FOR SUMMARY JUDGMENT

### A. *Legal Standard for Claims of Discrimination*

K–Bin and Shintech (collectively, "K–Bin" or "Defendants") argue for summary judgment of the Title VII and section 1981 claims against them. Plaintiff alleges that the corporate Defendants discriminated against him because of his race or national origin, in violation of these federal statutes.

Section 1981 provides in part that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The phrase "make and enforce contracts" is defined to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." *Id.* § 1981(b). Section 1981 applies to contractual relationships in the employment setting and "is designed to include a federal remedy against discrimination in employment on the basis of race." *Adams v. McDougal,* 695 F.2d 104, 108 (5th Cir.1983). Similarly, Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer to discharge or otherwise discriminate against an individual with respect to that person's compensation, terms, conditions, or privileges of employment, or to otherwise adversely affect the person's status as an employee, because of that person's race. *See* 42 U.S.C. § 2000e–2(a).

Liability under 42 U.S.C. § 1981 requires the same legal analysis as a Title VII discrimination claim. *See Patterson v. McLean Credit Union,* 491 U.S. 164, 186, 109 S.Ct. 2363, 2377, 105 L.Ed.2d 132 (1989); *Wallace*

---

2. Furthermore, the Court notes that Plaintiff's claim of negligence against Giannone is contradictory with his claims of intentional discrimination against K–Bin and Shintech. If his employers intentionally discriminated against him, then Giannone's failure to test the tea was not the cause of his damages. Presumably, K–Bin and Shintech would have fired Plaintiff anyway because of the lack of a valid medical reason for the presence of cocaine in Quintanilla's drug specimen, and because of their discriminatory intentions.

*v. Texas Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir.1996); *Marcantel v. State of La. Dept. of Transp. and Dev.*, 37 F.3d 197, 198 n. 4 (5th Cir.1994). Plaintiff's Title VII and section 1981 claims require a showing of intentional discrimination. To determine whether intentional discrimination exists, the Fifth Circuit applies the burden-shifting analytical framework first established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Long v. Eastfield College*, 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* analysis to Title VII unlawful retaliation cases); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir.1988) (applying *McDonnell Douglas* to a differential treatment case brought pursuant to Title VII).[3]

Under *McDonnell Douglas/Burdine* framework, the Court employs a three-part test designed to determine a defendant's motivation in taking the challenged action. *See McDonnell Douglas*, 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 252–54, 101 S.Ct. 1089, 1093–94 (1981). First, the plaintiff must establish a *prima facie* case by proving the elements of the discrimination claim. If the plaintiff proves her *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Olitsky v. Spencer Gifts, Inc.*, 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.*, 941 F.2d 374, 376 (5th Cir. 1991). This does not require that the defendant persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. *See Hicks*, 509 U.S. at 507–08, 113 S.Ct. at 2747–48.

Finally, if the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case is defeated. *See Burdine*, 450 U.S. at 255 n. 10, 101 S.Ct. at 1095 n. 10. The plaintiff's burden of persuasion then arises, and he or she must produce evidence that the defendant's proffered reasons are mere pretexts, the real reason for the action having been based on an impermissible *animus*. *See id.* at 256, 101 S.Ct. at 1095; *Bodenheimer*, 5 F.3d at 959. The plaintiff may succeed at this juncture, either by persuading the Court that a discriminatory reason more likely motivated the defendant, or by showing that the defendant's proffered explanation is not entitled to credence. *See Burdine*, 450 U.S. at 256, 101 S.Ct. at 1095. The ultimate burden of proving intentional discrimination rests at all times with the plaintiff. *See Hicks*, 509 U.S. at 507, 113 S.Ct. at 2749.

Summary judgment is particularly appropriate when the Court is evaluating evidence at the "pretext" stage of the *McDonnell Douglas* analysis.

'[I]t is relatively easy both for a plaintiff to establish a *prima facie* case and for a defendant to articulate a legitimate, nondiscriminatory reason for his decision.' ... In the context of summary judgment ..., the question is not whether the plaintiff proves pretext, but rather whether the plaintiff raises a genuine issue of fact regarding pretext.

*Britt v. Grocers Supply Co.*, 978 F.2d 1441, 1450 (5th Cir.1992) (quoting *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 811 (5th Cir.1991)). Speculation and belief are insufficient to create a fact issue as to pretext. *See Britt*, 978 F.2d at 1451. Nor can pretext be established by mere conclusory statements of a plaintiff who feels that she has been discriminated against. *See E.E.O.C. v. Exxon Shipping Co.*, 745 F.2d 967, 976 (5th Cir.1984).

B. *Plaintiff Has Established a Prima Facie Case of Discrimination*

First, the Court must determine whether Quintanilla has presented a *prima facie* case of discrimination under Title VII and section 1981. To state a *prima facie*

---

**3.** *McDonnell Douglas* was refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), and was further clarified in *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993).

case under those statutes, Plaintiff must show that (1) he is a member of a protected group; (2) he was qualified for his position; (3) despite his qualifications, he suffered an adverse employment action; and (4) he was replaced by a non-member of the protected class or non-members received more favorable treatment because of their status as non-members of the protected class. *See Daigle v. Liberty Life Ins. Co.,* 70 F.3d 394, 395 (5th Cir.1995); *Norris v. Housing Authority of City of Galveston,* 980 F.Supp. 885, 901–02 (S.D.Tex.1997); *see also McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824.

■ The first three elements of Plaintiff's case are clearly established. Quintanilla is a member of a protected group (he is Hispanic), there is no dispute as to his qualifications for his position, and there is no dispute that he was fired after the drug test. K–Bin argues that Plaintiff cannot establish the fourth element as a matter of law, because he was replaced by a Hispanic male. However, Plaintiff may still state a *prima facie* case by showing that non-Hispanics were treated more favorably. *See Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir.1985) ("[T]he single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated [by] discriminatory reasons."), *quoted in Nieto v. L & H Packing Co.,* 108

F.3d 621, 621 n. 7 (5th Cir.1997) (citation omitted).[4]

■ Quintanilla has succeeded in doing this, by submitting evidence that two white male employees of K–Bin/Shintech, Michael Easterbrooks and Richard Austin, were known by the employer to be cocaine users but were not punished by immediate termination. Although Defendants argue that, "since 1990, every employee who has tested positive for cocaine pursuant to the random drug testing policy has been terminated from employment with either K–Bin or Shintech," the evidence shows that not all employees were treated similarly. Quintanilla has submitted Easterbrooks' affidavit, in which Easterbrooks affirms that throughout his employment with Shintech, he drank heavily and periodically used illegal drugs. Easterbrooks also states that his supervisors knew of his drug use but took no steps to discipline or terminate him.[5] When he voluntarily checked himself into a drug rehabilitation program after an overdose of prescription medication, his supervisor at Shintech told him that if he received treatment, he could keep his job. Easterbrooks was later terminated for reasons other than drug use,[6] and was given severance pay.

Similarly, Richard Austin's affidavit states that he submitted a urine sample for a routine drug screen at Shintech, but notified his

4. Plaintiff and Defendants have engaged in a heated debate regarding whether the fact that Quintanilla was replaced by a Hispanic male should have any effect on his *prima facie* case. Defendants, despite their citation of *Daigle* as authority that the fourth prong of Plaintiff's prima facie case may be met either by showing replacement by a non-member of the protected class or by less favorable treatment than non-members, nevertheless argue that the race of Quintanilla's replacement mandates summary judgment. Incomprehensibly, Defendants also cite to *Nieto,* which clearly rejects such a position, holding instead that "[w]hile the fact that one's replacement is of another national origin 'may help to raise an inference of discrimination, it is neither a sufficient nor a necessary condition.'" *Nieto,* 108 F.3d at 624 n. 7 (quoting *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996)). While Defendants repeatedly cite *Nieto* for the position that such information is "highly relevant," nowhere does *Nieto* state such a strong opinion on the issue; the case merely states that the status of one's replacement is "material," but is not "outcome determina-

tive." *Id.* at 624. *Nieto* is the Fifth Circuit's latest pronouncement on the issue, and is binding on this Court. The Court is frankly baffled that the parties have engaged in such unwarranted personal attacks and wasted so much time, toil, and effort on this issue.

5. Although Defendants attack Easterbrooks' affidavit regarding his supervisors' knowledge as "an inadmissible conclusion" and "utter speculation," the Court disagrees. It is indeed their allegation that Easterbrooks has no personal knowledge of his statements that is "utter speculation." Easterbrooks may have personal knowledge that allows a factfinder to infer that his supervisors were aware of his drug use; for example, he may testify that he told them of his problems. Whether or not they actually had knowledge is an issue of material fact, precluding summary judgment.

6. According to Easterbrooks' affidavit, he was fired because he missed several days of work after he was refused a loan from his 401k plan proceeds.

employer before the results were final that he thought the result would be positive because of his cocaine use. Austin states that during a meeting with Shintech's plant manager and Human Resource director, he was told that if he entered a company-sponsored drug rehabilitation program, he could keep his job. Austin was only fired after he failed to complete the company's rehabilitation program.

The fact that these two white males, known by K–Bin/Shintech to be drug users, were not immediately terminated but first given a chance to complete rehabilitation and keep their jobs is sufficient, for summary judgment purposes, to raise a fact issue as to whether Quintanilla, who was given no such offer of rehabilitation, was treated less favorably than non-Hispanics.

In Reply, Defendants argue that Quintanilla was not "similarly situated" to Austin and Easterbrooks, alleging that Austin and Easterbrooks never actually tested positive for cocaine. Therefore, according to Defendants' argument, Austin and Easterbrooks never "violated" Shintech's drug policy, and thus they could not have been terminated for a drug policy violation.

Defendants' argument is insufficient in several aspects. First, although it appears clear that Easterbrooks did not test positive for cocaine, whether Austin did is not so clear. To show that Austin never tested positive for cocaine, Defendants present the second affidavit of Shintech's personnel supervisor, Carol Andrews, which conflicts with her first affidavit, attached to the Motion for Summary Judgment. Andrews's first affidavit states that Austin tested positive for cocaine use and was accordingly terminated. Ms. Andrews's second affidavit, however, contradicts this, stating that she was mistaken in her first affidavit because Austin did not ever test positive for cocaine. Andrews states that she was mistaken in the first affidavit because she "relied upon a representation that Mr. Austin had been terminat-

ed for testing positive for cocaine." Andrews does not identify where that representation came from, or why she relied upon it in her affidavit, in which she swore under oath that "all facts contained herein are true and correct." The fact that Andrews acknowledges that she was incorrect in her first affidavit because she "relied upon a representation" that was wrong casts doubt on the entirety of both of her affidavits. Far from correcting her alleged mistake, the second affidavit serves to invalidate the first entirely, and leaves a fact issue as to whether Austin tested positive for cocaine.[7] Because Defendants rely largely on Andrews' now invalid first affidavit and accompanying attachments in their Motion for Summary Judgment, their Reply with Andrews's second affidavit considerably weakens their summary judgment position overall.

Furthermore, Defendants attempt to confuse the issue of drug policy violations and make an unwarranted differentiation between drug users and those individuals who test positive for drugs. Defendants hang their hat on the fact that Quintanilla, who tested positive for cocaine, is not "similarly situated" for punishment purposes as two admitted cocaine users. However, it is clear from a review of Shintech's Drug Policy that "[t]he use ... of [illegal drugs] by any employee ... is strictly prohibited." It is the *use* of cocaine that is a drug policy violation, not merely testing positive for cocaine, as Defendants disingenuously imply. Therefore Austin, Easterbrooks, and Quintanilla were indeed "similarly situated," as they all (allegedly) violated the drug policy.

In sum, there is sufficient summary judgment evidence that Plaintiff, a Hispanic male, did not violate the drug policy, and was summarily fired. Conversely, there is evidence that two white males did violate the company's drug policy, and were given the opportunity to rehabilitate and retain their jobs. There is a fact issue as to whether

---

7. Furthermore, even if Austin did not test positive for cocaine, it is clear that his request for assistance and his policy violation was "prior to or while an actual search, urine drug screen or inspection" was being undertaken. Defendants try to distinguish Austin's violation from Quintanilla's because Austin asked for help with his drug problems. However, if their drug policy seeks to help those who come forth voluntarily unless "prior to or while an actual search, urine drug screen or inspection" is being undertaken, it should not have benefited Austin, who only came forth when he feared that his test would come up positive.

these white employees were punished similarly to Plaintiff. The strengths and weaknesses of the conflicting evidence should be determined by a finder of fact.[8] Viewing the evidence in the light most favorable to the Plaintiff, the Court finds that Quintanilla has stated a *prima facie* case of discrimination based on race or national origin.

### C. K–Bin and Shintech's Proffered Reason is Not Legitimate and Non–Discriminatory

■ Defendants argue that Plaintiff was fired for a legitimate, non-discriminatory reason: he failed the drug test and violated the company's drug policy. However, as previously discussed, Quintanilla has presented summary judgment evidence establishing that similarly situated white males, known to be cocaine users, were not immediately terminated for this violation of the drug policy, which supposedly mandates immediate termination.[9] Moreover, Defendants' alleged non-discriminatory rationale is essentially the same as their argument that Plaintiff has not established a *prima facie* case of discrimination. Defendants simply reassert their contention that all other employees testing positive for illegal drugs were also fired. Defendants have not proffered any non-discriminatory reason for the disparate treatment, instead attempting to deny that it exists. Because Defendants have not come forth with legitimate, non-discriminatory reasons for their disparate treatment of Quintanilla when compared to other white employees, the Court need not even address pretext.

The Court finds, therefore, that Defendants have failed to carry their summary judgment burden. Plaintiff has presented a *prima facie* case of intentional racial discrimination, which Defendants have failed to rebut. Accordingly, Defendant K–Bin and Shintech's Motion for Summary Judgment on Plaintiff's Title VII and 42 U.S.C. § 1981 claims is **DENIED**.

### D. Shintech Can Be Considered Quintanilla's Employer

■ Next, Shintech argues that it cannot be held liable as Plaintiff's employer under Title VII as a matter of law. To determine whether K–Bin and Shintech are joint employers, the Court must consider (1) interrelations of operation, (2) common management, (3) centralized control of labor relations, and (4) common ownership and financial control. *See Trevino v. Celanese Corp.*, 701 F.2d 397, 404 (5th Cir. 1983). First, K–Bin is a wholly-owned subsidiary of Shintech; thus, the fourth element is satisfied. Next, in this enquiry, courts have focused primarily on the second factor. *Id.* "The critical question to be answered then is: What entity made the final decisions regarding employment matters related to the person claiming discrimination?"

■ In this case, the plain facts presented by Plaintiff clearly rebut Shintech's bald contentions that it does not direct or control K–Bin's employees. First, Carol Andrews is Personnel Supervisor for Shintech, and admits that she handles the personnel functions for both K–Bin and Shintech. This factor alone is sufficient to show "centralized control of labor relations." Furthermore, in Defendants' Motion for Summary Judgment, Andrews's affidavit is submitted to validate K–Bin's employment records; Andrews states that she is familiar with and has knowledge of those documents. K–Bin's manufacturing facility, where Plaintiff worked, is located within Shintech's complex. K–Bin utilizes Shintech's personnel policies and applies them to its employees. The drug

---

8. The Court notes, however, that Plaintiff survives summary judgment by a slim margin. Proving discrimination to a finder of fact will be difficult, especially since he was terminated pursuant to a facially valid drug policy. Consequently, the Court strongly urges both parties to seriously consider their settlement options in this case.

9. Defendants also make much of the fact that Quintanilla admitted in his deposition that he had no knowledge of any other employees who had tested positive for cocaine or how they were treated. The fact that Plaintiff was not, at the time of his deposition, aware of the specific facts surrounding the alleged discrimination does not mean that no discrimination occurred. To suggest that K–Bin did not discriminate because Quintanilla did not realize it at the time is completely absurd. Now that Plaintiff has substantiated his allegations, they are no longer "sheer speculation."

policy and random drug testing policy under which Plaintiff was terminated are Shintech's policies. K–Bin is not mentioned in the policies. It was Shintech's employees who decided to suspend and terminate Quintanilla. The record shows that Shintech's Director of Manufacturing, E.E. Schroeder, made the decision to suspend Plaintiff, while Andrews conducted the investigation, participated in the decision to terminate Plaintiff, and recommended that he be dismissed.

Furthermore, when Quintanilla applied for unemployment compensation, Shintech was listed as his employer, and Andrews responded to the state agency mentioning only Shintech. When Quintanilla was hired, he completed a Shintech application and was given a Shintech employee badge. His performance evaluations and job assignments were done by both Shintech and K–Bin employees. Dr. Giannone's report on Quintanilla's drug test was requested by and submitted to Carol Andrews at Shintech. Finally, the only evidence offered by Defendants in support of their argument that Shintech and K–Bin were not joint employers is the affidavit of Carol Andrews, stating that Shintech does not direct or control K–Bin's hiring, training, discipline or termination of employees, and does not otherwise control K–Bin. The facts as stated above indicate otherwise.[10] Therefore, the Court finds that Shintech can be held liable as an "employer" under Title VII.

### E. *Punitive Damages and Back Pay Wages*

Next, Defendants argue that Plaintiff is not entitled to punitive damages and back pay wages. The Court declines to grant summary judgment on these points. First, the Civil Rights Act of 1991, amending Title VII, provides that a plaintiff may recover punitive damages where the plaintiff demonstrates that the unlawful discrimination was done "with malice or with reckless indifference to the federally protected rights" of the plaintiff. 42 U.S.C. § 1981a(b)(1). Defendants' only argument for summary judgment on punitive damages is that a defendant cannot be punished for lawfully implementing a random drug testing program. Yet, if Plaintiff succeeds in his Title VII discrimination

claims, it will not be because Defendants have a lawful drug testing policy, but because they implemented it in an unlawful and discriminatory manner. Accordingly, Plaintiff may be able to prove punitive damages, and Defendants' Motion for Summary Judgment on punitive damages is **DENIED**.

Next, Defendants argue that Plaintiff is not entitled to back-pay wages as of the time that he voluntarily resigned from his subsequent position at Kelly Services. Whether an employee has exercised reasonable diligence to mitigate damages is a question of fact, and the burden is on the employer to show failure to mitigate. *See Sellers v. Delgado College*, 902 F.2d 1189, 1193 (5th Cir.1990). The mere fact that Quintanilla quit his subsequent position, without more, is insufficient to show that he did not exercise reasonable diligence in mitigating damages. Defendants have not met their burden of showing that the position at Kelly Services was "substantially equivalent work," or that Quintanilla did not exercise reasonable diligence to obtain it. *See id.* (employer may meet burden of proof by demonstrating "that substantially equivalent work was available and that the Title VII claimant did not exercise reasonable diligence to obtain it."). Accordingly, Defendants' Motion for Summary Judgment on Plaintiff's back-pay wages is **DENIED**.

## V. CONCLUSION

For the reasons stated above, Giannone's Motion for Summary Judgment is **GRANTED**, and K–Bin and Shintech's Motion for Summary Judgment is **DENIED**. Furthermore, because Defendants' Motion for Summary Judgment is denied, their request for attorney's fees is also **DENIED**. The parties are **ORDERED** to bear their own taxable costs and attorney's fees incurred herein to date. The parties are also **ORDERED** to file no further pleadings on these issues in this Court, including motions to reconsider or the like, unless justified by a *compelling* showing of new evidence not available at the time of the instant submissions. Instead, the

---

10. Furthermore, as explained *supra*, the validity of Andrews' self-serving affidavit has been seriously questioned by her second, contradicting affidavit, in which she admits that she relied on representations of others when making her first affidavit.

parties are instructed to seek any further relief to which they feel themselves entitled in the Fifth Circuit Court of Appeals, as may be appropriate in due course.

IT IS SO ORDERED.

## PARTIAL FINAL JUDGMENT

For the reasons set forth in the Court's Order entered this date, Defendant Giannone's Motion for Summary Judgment is hereby **GRANTED.** All claims against Giannone are **DISMISSED WITH PREJUDICE.** Defendants K–Bin and Shintech's Motion for Summary Judgment is **DENIED.** All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date.

**THIS IS A PARTIAL FINAL JUDGMENT.**

IT IS SO ORDERED.