**David G. PORTER Plaintiff,**

v.

**EXXON MOBIL CORPORATION Defendant.**

No. G–02–070.

United States District Court, S.D. Texas, Galveston Division.

Jan. 22, 2003.

David T Lopez, David Lopez & Associates, Houston, TX, for David G Porter, plaintiff.

William Scott Helfand, Magenheim Bateman et al, Houston, TX, for Exxon Mobil Corporation, defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff David Porter ("Porter") brings this action against Exxon Mobil Corporation ("Exxon") seeking damages for Exxon's allegedly wrongful termination of Porter. Specifically, Porter alleges that his termination was a result of improper age discrimination. Porter was terminated on October 4, 2000. He subsequently filed a complaint of discrimination with the EEOC alleging age discrimination. On December 19, 2001, the EEOC issued a dismissal and right to sue letter because the EEOC concluded that it was unable to substantiate any potential age discrimination. As a result, Porter filed this action on January 29, 2002, seeking reinstatement with credited services, lost pay, liquidated damages, and attorney's fees. Now before the Court is Exxon's Motion for Summary Judgment, and Porter's timely Response. After carefully reviewing Exxon's Motion, Porter's Response thereto, the relevant evidence, and the applicable law, the Court finds that Exxon's Motion for Summary Judgment must be **GRANTED**.

## I. BACKGROUND

The undisputed facts of this case are as follows. Porter was an Exxon employee from 1968 until 2000, literally starting his career for Exxon at the age of 20. Porter was a Buyer for Exxon and continued in that role after the merger between Exxon and Mobil in November, 1999. The year before his termination, Porter assumed responsibility for the Materials Coordination and Planning function at the Mont Belvieu Plastics Plant ("Plant"). Generally, Porter was responsible for all the major purchases (up to $300,000) that were needed for the Plant. On August 18, 1999, the Plant ordered two Advance Maxum Gas Chromatograph Analyzers from Applied Automation for approximately $100,000, in order to replace certain pieces of outdated equipment at the Plant. The anticipated delivery date was December 23, 1999. In early December, Applied Automation notified the Plant that the analyzers would be completed by the end of 1999 but that the analyzers were unable to be delivered by the end of the year because Applied Automation could not properly test and calibrate the analyzers in time. In response, Gary Gilmore, the Plant's First Line Supervisor, devised a plan of delivering the untested equipment to the Plant before December 31, 1999. Then the Plant, at its own expense, would return the analyzers to the manufacturer in 2000 for proper testing. According to the plan, the analyzers were received at the Plant on December 30, 1999, and then returned to the manufacturer on January 4, 2000.

Exxon budgets its expenditures on a calendar year basis, and as a result, requires that all costs for the year be "booked" before December 31. Gilmore's plan was devised so that the Plant could book the analyzers as expenditures under the 1999 budget, even though Exxon would not receive the equipment until 2000

(otherwise known as an "expense acceleration"). That way, the Plant would not have to cut into its 2000 budget even though the analyzers were technically a 2000 purchase. As a result of this expense acceleration, the Plant overstated 1999 expenses and understated 2000 expenses, contrary to Exxon policies. On January 14, 2000, after the Plant shipped the analyzers back to the manufacturer, an Exxon accounting analyst discovered the irregular transaction. A formal investigation into the transaction was conducted. The investigation centered around four employees-Gary Gilmore (First Line Supervisor), David Porter (Buyer), David McLain (Second Line Supervisor), and Tim Andrews (Project Specialist). Gary Gilmore devised the plan and discussed it amongst the others. Porter, McLain, and Andrews helped procure the analyzers consistent with Gilmore's plan, although McLain's and Andrew's extent of participation and knowledge of the transaction are disputed. Regardless, David Porter candidly admitted to Exxon that the sole purpose of the plan was to book the expenses under the 1999 budget, rather than the 2000 budget. As a result of the investigation, disciplinary actions were recommended against all four employees involved in the plan. Although the official recommendation did not include any terminations, both Gilmore and Porter were terminated on October 4, 2000, while McLain and Andrews received performance rating cuts (which reduces their potential salary) and other sanctions. Porter was 52 years old and Gilmore was 49 years old when they were terminated. McLain was 47 and Andrews was 42 when they were disciplined as a result of the investigation.

Porter alleges that age discrimination, rather than his conduct surrounding the expense acceleration, was Exxon's true motivation in terminating him. Porter

presents no direct proof of statements made to him to that effect, and he admits that the stated reason for his termination was his handling of the analyzer purchases. But, Porter does list four specific pieces of evidence that he contends present a genuine issue of material fact that Exxon improperly fired him because of his age. First, Porter was replaced by Dwight Plaisance, age 49, on March 1, 2001. Mr. Plaisance remained at the position through February 1, 2002, until he was transferred. Porter argues that Plaisance was not a bona fide replacement and was specially selected to defeat this lawsuit. To support his argument, Porter points to the fact that Exxon was aware that Porter had obtained counsel when it selected Plaisance, and that Plaisance was an unlikely successor to Porter in Porter's opinion.

Second, Porter contends that McLain and Andrews, ages 47 and 42 respectively, received disciplines short of termination only because of their younger age. Porter argues that both were involved to the same extent as he was, yet they were not terminated for their involvement. Third, Porter argues that his termination coincides with Exxon's announcement that it anticipated reducing ten thousand jobs during the 1998–2002 period as a result of the Exxon Mobil Merger. Lee Raymond, Chairman and CEO of Exxon Mobil, made the statement at the merger press conference. Porter concedes that Raymond's statement does not suggest age discrimination, nor does the statement infer that any reduction would take into account age. However, Porter argues Exxon personnel chose to terminate him because Exxon was looking to eliminate positions; hence, the expense acceleration investigation essentially gave them an excuse to terminate an older employee. Last, Porter points to two separate occasions of a supervisor asking him when he thought he might retire.

The first conversation was with Mr. Greer, approximately three years prior to Porter's termination. The second conversation was with Mr. Scarborough, at some point right before the merger. Porter argues that Mobil had a better severance plan than Exxon, and because of this, that Exxon wanted to terminate the older Exxon employees before they became eligible for the more generous severance plan.

## II. ANALYSIS

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evi-

dence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

Porter has not presented any direct evidence of age discrimination by Exxon. Since Porter relies exclusively on circumstantial evidence, this Court must apply the burden-shifting analytical framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 824, 36 L.Ed.2d 668 (1973). *See also Sandstad v. CB Richard Ellis, Inc.,* 309 F.3d 893, 896–97 (5th Cir.2002); *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 654 (5th Cir.1996) (both applying the *McDonnell Douglas* analysis to claims alleging age discrimination). Under the *McDonnell Douglas* framework, the Court employs a three-part test designed to ascertain a defendant's motivation in taking the challenged action. *See McDonnell Douglas,* 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Quintanilla v. K–Bin, Inc.,* 8 F.Supp.2d 928, 933 (S.D.Tex.1998). First, a plaintiff must establish a *prima facie* case by proving the elements of a discrimination claim. *See Russell v. McKinney Hospital Venture,* 235 F.3d 219, 222 (5th Cir.2000). If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 957 (5th Cir.1993). In order to rebut such presumption, the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the alleged discriminatory action. *See Russell,* 235 F.3d at 222; *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). The defendant need not persuade the trier of fact that there was no intentional discrimination; the defendant need only produce evidence on that point. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993).

Finally, if the defendant satisfies this burden, the presumption of discrimination established by the plaintiff's *prima facie* case is defeated. *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255 n. 10, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 (1981). The plaintiff may meet this ultimate burden by producing evidence that demonstrates the defendant's offered reason was mere pretext for discrimination. *See Sandstad,* 309 F.3d at 897. Further, "a reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason." *See Walton v. Bisco Indus., Inc.,* 119 F.3d 368, 370 (5th Cir.1997) (quoting *Hicks,* 509 U.S. at 515, 113 S.Ct. at 2751).

To state a *prima facie* case of employment discrimination under the Age Discrimination Employment Act, 29 U.S.C. § 621 *et seq.* ("ADEA"), Porter must show that (1) he was discharged; (2) he was qualified for his position; (3) he was within the protected class at the time of discharge (over the age of 40); and (4) he was replaced by someone younger or outside of the protected class. *See Sandstad,* 309 F.3d at 897. Exxon does not dispute that Porter was discharged and that he was within a protected class at the time of his termination. Rather, Exxon contends it did not replace Porter with a substantially younger employee. Additionally, Exxon argues that Porter was not qualified for his position because of the actions he took that resulted in his ultimate termination.

■ Porter must demonstrate that his replacement was "sufficiently younger" in order to establish an inference of age discrimination. *See Bienkowski v. American Airlines, Inc.,* 851 F.2d 1503, 1506 (5th Cir.1988) (explaining that only five years difference between the discharged employee who sues alleging discrimination and his replacement presents a close question of whether the plaintiff can establish a *prima*

*facie* claim). Porter's replacement was a mere three years younger than Porter. The Court finds it deeply troubling that an age discrimination claim can be based upon a slight difference of three years. The Court notes that other Courts have found that a comparable age difference is insufficient to state a *prima facie* age discrimination case. *See Bush v. Dictaphone, Corp.,* 161 F.3d 363, 368 (6th Cir.1998) (holding that five years difference between the replacement and the plaintiff is insufficient as a matter of law to state a *prima facie* case of age discrimination); *Grogan v. Savings of America, Inc.,* 118 F.Supp.2d 741, 748 (S.D.Tex.1999) (holding that two years is not a substantial enough age difference to permit an inference of discrimination). Although the Court believes that this is a very close question, after careful consideration of the precedent and the facts presented, the Court is not willing to hold that three years difference is insufficient as a matter of law to permit an inference of discrimination.

■ Furthermore, the Court concludes that Porter has presented sufficient evidence to create a fact question as to whether he was qualified for his position with Exxon. Exxon cites Porter's violation of Exxon's business ethics policies as conclusive evidence that he was not qualified for his position at the Plant. The fact that Porter was employed for 32 years at Exxon alone presents a fact question of whether or not he was qualified for his position at the Plant. Additionally, the Fifth Circuit has held that when the reason for termination also serves as the basis of the defendant's argument that plaintiff is not qualified, it is more appropriate to examine the employer's articulated reason at the pretext stage. *See Bienkowski,* 851 F.2d at 1506. Hence, the Court finds that Porter has presented sufficient evidence to make out a *prima facie* case of age discrimination. The burden of production now shifts to Exxon to articulate a nondiscriminatory reason for its decision to terminate Porter.

■ Exxon's burden to produce a nondiscriminatory reason for Porter's termination is "one of production, not persuasion; it can involve no credibility assessment." *Sandstad,* 309 F.3d at 898 (quoting *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 142, 120 S.Ct. 2097, 2106, 147 L.Ed.2d 105 (2000)). Exxon argues that Porter violated its business ethics policies when he knowingly participated with Gilmore's plan. Porter testified to the following: (1) his job was to oversee all purchases of non-contract goods below $300,000 at the Plant; (2) as part of his job, Porter had to ensure that the purchases were made in compliance with Exxon's business ethics rules; (3) Porter approved the purchase of the two analyzers; (4) Porter knew that the analyzers would have to be sent immediately back to the manufacturer upon arrival so the analyzers could be tested and calibrated before use; (5) the sole purpose of having the analyzers delivered before calibration was to book the purchase in 1999; (6) Exxon incurred additional costs because it had to ship the analyzers back to the manufacturer; (7) Porter had previously attended specific training classes on business ethics; and (8) Porter knew that violation of Exxon's business ethics policies was grounds for termination. In connection with Porter's testimony, Exxon submitted the affidavit of Bobby Alexander, the General Auditor for Exxon Mobil Corporation. Alexander states that Porter's expense acceleration of the analyzers purchase constituted a clear violation of Exxon's business ethics policies. After thoughtful review of the aforementioned evidence, the Court finds that Exxon has met its burden of articulating "some legitimate, nondiscriminatory reason" for Porter's termination. *Walton,* 119 F.3d at 370.

■ Having concluded that Exxon has met its burden, the inference of discrimination disappears, and Plaintiff must prove "both that the defendant's articulated reason is false and that the defendant intentionally discriminated." *Id.* In an effort to meet such burden, Porter offers the statements that Lee Raymond, then Chairman and CEO of Exxon Mobil, made during the press conference following the announcement that Exxon and Mobil were merging. Raymond made general statements outlining that Exxon Mobil anticipated future reductions in the work force based upon his belief that the merger would produce cost-saving synergies. Similarly, Porter argues that the fact that he was asked about retirement by his two supervisors, Greer and Scarborough, infers that his age played a role in Exxon's decision to terminate him. The Court fails to see how these statements prove Exxon intentionally discriminated against him or that its proffered reason for his termination is false. Regardless, Porter testified that Raymond, Scarborough, and Greer had nothing to do with his termination. In order to constitute evidence of discrimination, oral statements must be made by a speaker that is primarily responsible for Porter's termination and they must indicate age discrimination. *See Sandstad,* 309 F.3d at 899. Thus, the statements that Porter offered are deficient on both accounts.

Next, Porter disputes that his conduct was a violation of Exxon's business ethics policies. Further, even if it was, Porter contends that his conduct did not warrant termination, as evidenced by the investigation committee's recommendation to give him a lesser sanction. Last, Porter points to the fact that Exxon did not fire McLain or Andrews, who are younger than Porter, despite their involvement in the analyzers purchase.

Porter admitted that he was never told his age was a factor in his discharge. Also, when asked about the circumstances that were the foundation of Exxon's investigation, Porter conceded he knowingly authorized the delivery of unusable analyzers, consistent with Gilmore's plan, so that the purchase would be booked as a 1999 purchase. Moreover, Porter testified that it was his responsibility to ensure that all of the Plant's purchases complied with Exxon's business ethics policies and purchase policies. Porter also acknowledged that violating Exxon's company policies are grounds for termination. Simply put, Porter does not dispute Exxon's allegations concerning his role in the analyzers expense acceleration; rather, he disagrees with the determination that Exxon made following the investigation. The Fifth Circuit is clear that when a plaintiff has violated a company policy, the company may within broad limits deal with the employee free of judicial second guessing. *See Elliott v. Group Med. & Surgical Serv.,* 714 F.2d 556, 566 (5th Cir.1983) ("When questioned directly concerning the company's stated reasons for his dismissal, none seriously disputed either his awareness of or the objective *truth* of the company's stated ground of dissatisfaction with him, maintaining only that it was inadequate to warrant his termination. Within certain limits, however, not exceeded here, such judgments as that are for the employer, not for the court."). Furthermore, even overlooking that McLain (age 47) and Andrews (age 42) are only slightly younger than Porter, Exxon also fired Gilmore (age 49) for his participation in the scheme.

The Court cannot and does not believe that anti-discrimination laws were intended for cases such as this one. In order to analyze this case in its entirety, and to do so thoughtfully and fully, the Court might have even stretched by continuing its analysis past the *prima facie* case under the

622

framework established by *McDonnell Douglas.* Regardless, after conducting a complete review of the evidence presented, the Parties' arguments, and the applicable law, the Court concludes that Porter has failed to prove both that Exxon's stated reason for termination was false *and* to prove that Exxon intentionally discriminated against Porter on the basis of his age. Therefore, the Court finds that because Porter has failed to set forth specific facts showing that there is a genuine issue for trial with respect to his age discrimination claim, Exxon's Motion for Summary Judgment is **GRANTED**. Accordingly, Porter's claims against Exxon are hereby **DISMISSED WITH PREJUDICE**. A final judgment reflecting this dismissal will be issued concurrently with this Order. Each Party shall bear its own taxable costs and expenses incurred herein to date.

**IT IS SO ORDERED.**