Patricia **WILLIAMS**, Plaintiff,

v.

**GALVESTON INDEPENDENT SCHOOL DISTRICT,** Defendant.

**No. CIV.A. G–02–236.**

United States District Court, S.D. Texas, Galveston Division.

March 24, 2003.

Anthony P Griffin, Attorney at Law, Galveston, TX, for Patricia Williams, plaintiff.

Carla Jean Cotropia, Mills Shirley LLP, Houston, TX, for Galveston Independent School District, defendant.

### ORDER GRANTING GALVESTON INDEPENDENT SCHOOL DISTRICT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiffs Patricia Williams ("Williams") and Terri Watkins (Watkins) (collectively as "Plaintiffs") bring this action against their employer Galveston Independent School District ("GISD"). Plaintiffs, who

are African–American, allege that GISD is unlawfully discriminating against them because GISD pays two white coworkers higher salaries, despite that Plaintiffs and their white colleagues allegedly have similar jobs with substantially similar responsibilities. Plaintiffs seek damages for GISD's alleged discriminatory conduct under 42 U.S.C. § 1981. Now before the Court is Galveston Independent School District's Motion for Summary Judgment, and Plaintiffs' timely response thereto. After careful thought and considerable deliberation, the Court concludes that GISD's Motion must be **GRANTED** for the reasons articulated below.

## I. FACTUAL BACKGROUND

The following are the undisputed facts of this case. Williams and Watkins are both GISD employees. Williams has been employed by GISD for over thirty-one years and is currently the Executive Director of Employee and Community Relations. Watkins began her employment with GISD in 1990. In 2001, Watkins was promoted to her current position, Executive Director of Human Resources. Within GISD, there are sixty-two administrators, excluding the Superintendent, whose positions are included in GISD's "Exempt and Administrative Pay Schedule." GISD's Exempt and Administrative Pay Schedule has various pay grades that regulate minimum and maximum daily ranges of pay for administrators in each grade. Within GISD, there are eight pay grades; pay grade eight represents the highest range of salaries while pay grade one represents the lowest. There are only four administrative positions in pay grade eight: (1) Executive Director of Employee and Community Relations Williams (black female); (2) Executive Director of Human

Resources Watkins (black female); (3) Assistant Superintendent of Curriculum and Instruction E.J. Garcia ("Garcia") (white female); and (4) GISD Chief Financial Officer Paul McLarty ("McLarty") (white male).[1] Garcia and Williams entered pay grade eight in the 1995–1996 school year, while Watkins and McLarty entered pay grade eight in the 1999–2000 school year. Currently, pay grade eight has a minimum daily rate of $292.44 and a maximum daily rate of $387.66. Over the past three years, the four administrators in pay grade eight were paid as follows:

| | Garcia | Williams | McLarty | Watkins |
|---|---|---|---|---|
| 99–00 | $72,630 | $72,630 | $73,000 | $ —— |
| 00–01 | $83,440 | $75,129 | $82,686 | $71,648 |
| 01–02 | $94,249 | $77,630 | $92,499 | $76,673 |

After Williams learned of the widening gap between her salary and her white counterparts, she complained to then Superintendent Henry Boening. After several discussions with Boening about the disparity in compensation, Williams filed a grievance, which was later denied by Boening. Williams then brought her grievance to the School Board, which denied it on March 28, 2002. Following the School Board's denial, Williams filed this lawsuit on April 5, 2002. Subsequently, Watkins joined this lawsuit on August 14, 2002.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When one party moves for summary judgment, the non-

---

1. Although McLarty recently left GISD, he was CFO during the relevant times for pur-

poses of this lawsuit.

moving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; rather, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. Nevertheless, if the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.*, 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

### III. ANALYSIS

Plaintiffs allege race discrimination under 42 U.S.C. § 1981 primarily because GISD's two white pay grade eight employees have received substantially larger raises over the last three years than GISD's two black pay grade eight employees. Additionally, it appears from Plaintiffs' First Amended Complaint that Watkins alleges GISD wrongfully retaliated against and harassed her after Williams filed this lawsuit. GISD moves for summary judgment on both claims arguing that Plaintiffs cannot establish a *prima facie* case on either claim. Alternatively, GISD contends that even if Plaintiffs make out a *prima facie* case, Plaintiffs cannot meet their ultimate burden to prove that GISD's legitimate, nondiscriminatory reasons for the discrepancy in salaries is mere pretext for unlawful racial discrimination, as required under *McDonnell Douglas*.

### A. *McDonnell Douglas Burden–Shifting Analytical Framework*

"The Court's inquiry into intentional race discrimination is essentially the same for individual actions brought under [sections] 1981 and 1983, Title VI and Title VII." *Baldwin v. Univ. of Texas*, 945 F.Supp. 1022, 1031 (S.D.Tex.1996). To determine whether intentional discrimination exists, the Fifth Circuit applies the burden-shifting analytical framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *See, e.g., Long v. Eastfield Coll.*, 88 F.3d 300, 304 (5th Cir. 1996) (applying the *McDonnell Douglas* framework to unlawful retaliation cases); *Johnson v. Chapel Hill Indep. Sch. Dist.*, 853 F.2d 375, 381 (5th Cir.1988) (applying the *McDonnell Douglas* analysis to a differential treatment case). Under the *McDonnell Douglas* framework, the Court employs a three-part test designed to ascertain a defendant's motivation in taking the challenged action. *See McDonnell Douglas*, 411 U.S. at 803–04, 93 S.Ct. at 1824–25; *Quintanilla v. K–Bin, Inc.*, 8 F.Supp.2d 928, 933 (S.D.Tex.1998). First, a plaintiff must establish a *prima facie* case by proving the elements of a discrimination claim. *See Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 222 (5th Cir. 2000). If the plaintiff proves his *prima facie* case, a presumption of discrimination arises. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir.1993). The burden of production then shifts to the defendant to rebut this presumption by articulating a legitimate, nondiscriminato-

ry reason for the alleged discriminatory conduct. *See Russell,* 235 F.3d at 222; *Olitsky v. Spencer Gifts, Inc.,* 964 F.2d 1471, 1478 n. 19 (5th Cir.1992). A defendant meets this burden by proffering admissible evidence of an explanation that would be legally sufficient to justify a judgment for the defendant. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 376 (5th Cir.1991). This does not require the defendant to persuade the trier of fact that there was no intentional discrimination; rather, the defendant needs only to produce evidence on that point. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 2747–48, 125 L.Ed.2d 407 (1993).

The presumption of discrimination established by a plaintiff's *prima facie* case dissolves if the defendant successfully articulates a legitimate, nondiscriminatory reason for its conduct. *See Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 255, 101 S.Ct. 1089, 1095 n. 10, 67 L.Ed.2d 207 n.10 (1981). In order to carry plaintiff's ultimate burden at this point, a plaintiff must then produce evidence that the defendant's proffered reason is mere pretext for unlawful discrimination. *See Porter v. Exxon Mobil Corp.,* 246 F.Supp.2d 615, 619 (S.D.Tex.2003). A plaintiff need not always provide additional evidence of discrimination beyond its *prima facie* case because "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prod., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105 (2000).

*B. Plaintiffs Fail to Present a Prima Facie Case of Discriminatory Compensation*

■ To state a *prima facie* case of compensation discrimination under 42 U.S.C. § 1981, Plaintiffs must show that (1) they are members of a protected class, and (2) they were paid less than members outside of the protected class despite having substantially similar responsibilities. *See Uviedo v. Steves Sash & Door Co.,* 738 F.2d 1425, 1431 (5th Cir.1984). GISD concedes that Plaintiffs are members of a protected class (African–American). Instead, GISD vigorously argues that Plaintiffs cannot produce a genuine issue of material fact indicating that Williams's and Watkins's positions are substantially similar in responsibilities to either Garcia's or McLarty's positions; hence, Plaintiffs' claims fail as a matter of law because they have failed to make out the second element of their discriminatory compensation claims. The Court agrees.

Williams argues that her position is comparable to both Garcia's and McLarty's positions and Watkins contends that her position is comparable to McLarty's position. Although the Court candidly admits that all four employees of GISD that are being compared to each other are highly qualified and assigned to the same pay grade, the Court respectfully finds that it cannot be seriously argued that Plaintiffs' positions carry substantially similar responsibilities as compared to Garcia's and McLarty's positions.

As CFO, McLarty oversaw GISD's budget of $67 million in general and special funds. According to Watkins's testimony, the CFO oversees the maintenance, operations, transportation, food service, athletics, purchasing, and finance departments. Further, the CFO has six directors that report directly to him and he oversees roughly 350 employees. Moreover, according to the job description, the CFO must (1) supervise the "operations of Galveston Tax Collections"; (2) manage GISD's real estate, as well as GISD's property insurance, health insurance, and worker's compensation programs; (3) co-

ordinate the construction and maintenance of GISD buildings; and (4) ensure that GISD "implement[s] the policies established by federal and state law, State Board of Education rule, and the local [ ] board policy in the area of business operations." The aforementioned job responsibilities are just the highlights from the summary judgment evidence before the Court.

As Assistant Superintendent, Garcia oversees a budget in excess of $13 million in local, state, and federal funds. Garcia is primarily in charge of overseeing the educational programs that GISD provides. Moreover, Garcia has eight directors that report directly to her. According to her job description, Garcia must (1) plan, implement, and evaluate instructional programs; (2) facilitate the use of technology in the teaching-learning process; (3) develop GISD's goals and objectives; (4) "implement the policies established by federal and state law, State Board of Education Rule, and the local board policy in the area of curriculum and instruction"; and (5) "supervise and evaluate the performance of instructional supervisors and support staff in the curriculum department." Again, these are just the main job responsibilities that the Court has gleaned from the many that the Assistant Superintendent must undertake.

On the other hand, Williams has no directors that report to her and the only employee that does is her secretary. Williams's budget for the past school year was $118,312. According to her job description, Williams's role as Executive Director of Employee and Community Relations primarily requires her to (1) "provide guidance to district administrative personnel and supervisory personnel in matters concerning employee relations"; (2) recommend and revise employee relations policies; (3) administer GISD's employee grievance procedure; (4) coordinate the

"Grow Your Own" employees program; (5) develop a wellness program for GISD employees; (6) develop and implement the annual community outreach plan; and (7) develop and implement a "Parent Involvement Plan" to increase parental participation, amongst other obligations.

Watkins is the Executive Director of Human Resources. Watkins's budget for her department is $287,802. She has five employees that directly report to her although none of them are directors. According to her job description, Watkins must (1) encourage and promote incentive and recognition programs for employees; (2) coordinate GISD's recruitment and training program for GISD's new teachers, administrators, and staff; (3) make recommendations concerning employees' salaries and benefits; (4) administer GISD's employee evaluation; and (5) ensure that GISD is in compliance with state and federal equal employment laws, amongst other obligations.

The Court admits that it did not exhaust each of the four jobs' listed responsibilities in the instant Order. The Court is also well aware that each of these employees takes on numerous responsibilities that are not covered under the broad guidelines laid out in the job descriptions. Regardless, the Court feels that is has given a sufficient overview of each position so that it is certain that no reasonable juror could find that either of Plaintiffs' job responsibilities are substantially comparable to either Garcia's or McLarty's job responsibilities. Although all of these employees are in the same pay grade, that alone does not create a fact question as to whether or not their positions have substantially similar responsibilities. With all due respect to Plaintiffs, Garcia's and McLarty's positions' have considerably different and greater oversight responsibilities than Plaintiffs' positions. This is evident by

reviewing the GISD Administrative Organizational Chart; eight directors report to Garcia, while six report to the CFO. On the other hand, none report to Plaintiffs. Furthermore, Plaintiffs' respective budgets for their departments are dwarfed by Garcia's and McLarty's budgets.

Williams argues that since her position requires Texas mid-management, PDAS, *and* ILT certification, while Garcia's position requires Texas mid-management *or* other appropriate Texas certifications, a fact question exists as to the similarity of Garcia's and Williams's job responsibilities since Williams's position requires an additional qualification. Similarly, Watkins argues that since McLarty's and her position have identical educational requirements listed on the job description, a fact question exists as to the two positions' responsibilities and the similarity thereto. The Court does not dispute that Plaintiffs are just as qualified as Garcia and McLarty; in fact, the Court wants to make abundantly clear that its holding does not rest on any such finding. The fact that a position requires an additional qualification than another or that two positions have identical qualifications, does not mean that the positions are substantially similar in terms of their responsibilities for the Court's analysis. The Court's focus is on the positions' responsibilities at the time of the alleged discrimination, not the positions' mandatory qualifications at the time of hiring. *See Lowery v. Univ. of Houston–Clear Lake*, 82 F.Supp.2d 689, 696–97 (S.D.Tex.2000). For example, assume a corporation that manufactures fishing rods is looking for a sales manager for Galveston County on one hand, and seeking a sales manager to oversee the area encompassing Texas, Louisiana, and Alabama on the other. The corporation would likely require the same educational requirements for each sales manager position. Yet, it is quite a stretch to suggest that the two sales manager positions have substantially

similar responsibilities. Similar to the case at hand, the four positions that are being compared require essentially the same educational qualifications. It may also be true that Plaintiffs themselves could successfully perform the jobs of CFO and Assistant Superintendent. However, merely because Plaintiffs have the potential to perform the comparable positions in question does not mean that Plaintiffs' *current* positions have responsibilities that are substantially similar to the Assistant Superintendent for Curriculum and Instruction's and Chief Financial Officer's responsibilities. For all the reasons expressed above, the Court concludes that GISD's Motion must be **GRANTED** because Plaintiffs have failed to present a *prima facie* case of racial discrimination based upon the disparity of pay in GISD's pay grade eight.

### C. GISD's Legitimate, Nondiscriminatory Reasons for the Allegedly Discriminatory Discrepancies

■ Assuming, *arguendo*, that Plaintiffs could present a *prima facie* case, the Court now considers GISD's articulated reasons for the discrepancy in pay grade eight salaries. GISD gives two reasons for its decision to dramatically increase McLarty's and Garcia's compensation, while not doing the same for Plaintiffs. First, GISD recently eliminated the Assistant Superintendent for Administration position after Barbara McIlveen retired in December 1999. GISD contends that Garcia and McLarty picked up the bulk of the eliminated position's responsibilities; hence, they deserved more compensation. GISD's more salient and pressing reason for the dramatic raises is that the Texas Comptroller's Report ("Report") recommended GISD raise its salaries for certain administrative positions because GISD was paying considerably below market in com-

parison to other school districts.[2] The Report was presented to GISD in June 2000. It recommended that GISD eliminate the position of Assistant Superintendent for Administration, which GISD did. Additionally, the Report recommended the creation of Williams's current position, Executive Director of Employee and Community Relations, which Williams accepted at Boening's urging.

According to GISD, in response to the Report, Boening sought to raise administrators' salaries to levels that were comparable with other school districts. To do so, Boening employed the Texas Association of School Boards' ("TASB") Salary Study to determine what the market rates were for certain positions. GISD submits its Approved Fiscal Year 2001 Salary Adjustments chart ("Chart") as evidence of its intent. According to the Chart, in the 1999–2000 school year, the following were the actual salaries of the relevant administrators: (1) CFO-$73,000; (2) Assistant Superintendent of Curriculum and Instruction-$72,630; (3) Executive Director of Employee and Community Relations-$72,630; and (4) Executive Director of Human Resources-$71,576.[3] In the same year, the Chart lists the following as the TASB Study's average salaries for each of the above positions: (1) CFO-$87,373; (2) Assistant Superintendent of Curriculum and Instruction-$89,251; (3) Executive Director of Employee and Community Relations-$71,576;[4] and (4) Executive Director of Human Resources-(none was provided because this position was vacant within GISD at the time of the study). According to the Chart's descriptions of GISD's actions, GISD determined to raise the salaries for Garcia's and McLarty's positions, as well as many other positions, over two years so that GISD would eventually pay those positions the TASB Study average. Next, GISD described Williams's position as "currently above market" when compared to the TASB Study; thus, GISD only gave Williams a cost-of-living adjustment. The Chart did not make any recommendation for Executive Director of Human Resources because the position was vacant (Watkins would subsequently take over this role) at the time of this particular report. Similarly, according to GISD's Approved Fiscal Year 2002 Salary Adjustments chart, GISD raised McLarty's and Garcia's salary again, which brought their salaries in line with the TASB study average-consistent with GISD's two-year plan. Again, Williams only received a cost-of-living adjustment because her current salary was described as "currently above market." On the other hand, Watkins received a cost-of-living adjustment plus an additional $2526 raise because so that her salary was equal to the TASB Study average for her position.

2. Recently, the Texas Comptroller's Office conducted an audit of several school districts, including GISD, in order to make recommendations on how each school district could save money while simultaneously improving the performance of its students.

3. GISD did list the Executive Director of Human Resources's salary on the Chart despite that the position was vacant at the time the Approved Fiscal Year 2001 Salary Adjustments chart was created.

4. The TASB Study does not have a specific position named Executive Director of Employee and Community Relations. According to Former Superintendent Boening's affidavit, "The salary studies also revealed that there were not comparable positions in the other districts to that held by Dr. Williams. She was assigned to the new position with the same salary she had as Executive Director of Personnel. Because she dealt with employees, I determined that the best possible comparable to use would be director of personnel's position to determine market value of the job. Dr. Williams's salary was at or above market value."

Board members' depositions and former Superintendent Boening's affidavit corroborate GISD's Salary Adjustments charts and the reasons stated therein for GISD's determination to raise salaries in the manner that it did. GISD's stated reasons for its conduct are also consistent with the Texas Comptroller's Report. Given that GISD took these actions following the Report, and the general timing of the events surrounding this lawsuit, GISD's tendered reasons appear to accurately describe a school district's efforts to streamline its operations while keeping its key employees, all in an effort to improve the public education offered. Having reviewed all of the relevant summary judgment evidence before the Court, the Court finds, as a matter of law, that GISD's two proffered reasons for the discrepancies between the four positions' salaries qualify as legitimate, nondiscriminatory reasons. Having found such, the inference of discrimination, had it been created by Plaintiff's *prima facie* evidence, dissolves. *See Lowery,* 82 F.Supp.2d at 698.

## D. Plaintiffs Fail to Show Evidence of Pretext Necessary to Overcome GISD's Legitimate, Nondiscriminatory Reasons

■ Plaintiffs must now prove by a preponderance of evidence that GISD's articulated legitimate, nondiscriminatory reasons were not the actual reasons for its compensation scheme, but that such reasons were mere pretext for unlawful discrimination. *Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106. Plaintiffs need not come forward with direct evidence of discriminatory intent. Rather, " '[t]he factfinder's disbelief of the reasons put forward by the defendant (particularly if disbelief is accompanied by a suspicion of mendacity) may, together with the elements of the prima facie case, suffice to show intentional discrimination.' " *Lowery,* 82 F.Supp.2d at 699 (quoting *Hicks,* 509 U.S. at 511, 113 S.Ct. at 2749). Plaintiffs advance a variety of arguments as to why GISD's articulated reasons are mere pretext.

First, Plaintiffs assert that while GISD claims to adhere to the TASB Study in determining the salaries for the four employees in question, it did not follow other TASB policies that recommend where to start newly hired employees' salaries. Specifically, Plaintiffs point to the fact that McLarty was recently hired by GISD but paid significantly more than Williams, Garcia, and Watkins, all longtime GISD employees. Plaintiffs claim that GISD paid McLarty substantially above TASB recommendations, despite his "very limited school finance background." In doing so, Plaintiffs point to TASB policy 5.12, titled "Optional hiring guideline," which states: "If a new employee is hired above the minimum rate, the following guide may be used to give placement credit for significant job-related experience." TASB policy 5.12 then recommends paying new employees on a sliding scale up to mid-range in a particular pay grade, depending upon each employee's job-related experience. Plaintiffs point to McLarty's salary, substantially above the suggested guideline, as evidence that GISD's articulated reason is mere pretext. Additionally, Plaintiffs argue that GISD violated TASB policy 4.19 because one of its enumerated seven criteria in establishing employees' salaries is to create "[a] range of pay, from minimum to maximum . . . to reward experience."

The Court finds Plaintiffs' arguments unpersuasive. The Court does not dispute that GISD disregarded TASB policy in hiring and giving substantial raises to McLarty soon thereafter. However, TASB policy 5.12 is optional, as indicated by its title. Second, prior work experience is one of seven enumerated criteria that GISD should take into account in formulating salaries according to TASB policy 4.19. Even if the actions that GISD took regard-

ing McLarty's salary were discriminatory, it does not indicate any evidence of unlawful racial discrimination. Rather, it appears that raising McLarty's salary to the TASB Study average only discriminated against employees in that it did not take into account their previous experience with GISD. Hence, overlooking McLarty's prior work experience with school finance (or lack thereof) in giving him his raises discriminated against all GISD employees with significant work experience in their respective fields, including white employees. Therefore, the Court holds that Plaintiffs' first argument does not demonstrate that GISD's proffered reasons were mere pretext for unlawful *race discrimination. See Reeves,* 530 U.S. at 143, 120 S.Ct. at 2106.

Next, Plaintiffs argue that GISD's alleged nondiscriminatory reason for raising McLarty's and Garcia's salaries because of the additional responsibilities that they undertook as a result of eliminating McIlveen's position is pretext because Williams also undertook some of McIlveen's former responsibilities. The Court agrees. Garcia admitted in her deposition that Williams took over some of McIlveen's responsibilities. Although it is highly contested how many of McIlveen's duties that Garcia, McLarty, and Williams undertook, the fact that Williams undertook some of her responsibilities creates a material fact question as to one of GISD's proffered reasons for the discrepancy of salaries amongst the four employees in question.

Despite the Court's belief that a genuine issue of material fact exists as to one of GISD's proffered legitimate, nondiscriminatory reasons, the Court concludes, as it must, that Plaintiffs have failed to present any genuine issues of material fact that GISD's nondiscriminatory reason of raising McLarty's and Garcia's salaries significantly more than Watkins's or Williams's salaries in order to conform to the TASB

Study is mere pretext for unlawful racial discrimination. The Court believes its findings are also supported by the spirit of *Faruki v. Parsons S.I.P., Inc.,* 123 F.3d 315, 320 n. 20 (5th Cir.1997). In concluding that the plaintiff in that case failed to raise a fact question as to whether the defendant's reasons for his termination were pretextual, the Fifth Circuit noted that:

> Our conclusion that Agha failed to show Parsons's proffered reasons are pretextual is buttressed by the fact that Taylor, the manager who terminated Agha, was the same individual who hired Agha. Where, as here, the same actor hires and fires an employee, an inference that discrimination was not the employer's motive in terminating the employee is created.

*Id.* Former Superintendent Boening, according to Williams's and Watkins's deposition testimony, hired both of them for their current positions. Yet, Plaintiffs now argue to this Court that Boening, the same person who hired and promoted Plaintiffs, unlawfully discriminated against them. After reviewing all of the summary judgment evidence, the Court concludes that Plaintiffs, other than their own bald assertions, have failed to present sufficient evidence on their *prima facie* case of unlawful discrimination, and alternatively, failed to raise a material fact question as to whether GISD's legitimate, nondiscriminatory reason for raising salaries in the manner that it did, to conform to the TASB Study, was mere pretext for unlawful race discrimination. Thus, after careful thought, GISD's Motion is **GRANTED.**

### E. *Watkins's Retaliation Claim*

██ Watkins made various allegations that GISD retaliated against her after Williams filed her original suit. In order to state a *prima facie* claim of retaliation, Watkins must show: (1) she participated

in some statutorily protected activity; (2) she suffered an adverse employment action; and (3) a casual connection exists between the protected activity and the adverse action. *See Mota v. The Univ. of Texas Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir.2001). In Plaintiffs' response, Watkins conceded that her retaliation claim should be dismissed. Accordingly, GISD's Summary Judgment is **GRANTED** on Watkins's retaliation claim.

## IV. CONCLUSION

Before concluding, the Court notes that the briefs before the Court in this matter were truly excellent. The Court should hardly be surprised considering the caliber of these fine lawyers before it. The Court also notes, after reviewing all of the evidence, that GISD's efforts appear geared toward revamping the education provided to its students. The Court applauds such efforts. In its efforts to do so, GISD should be given wide latitude to determine the appropriate course for its schools, and considerable deference to take actions that it believes are in the best interests of the children, especially given the challenging environment facing the financing of school districts today. Having said that, the Court will not stand for racial discrimination in GISD or any other school district. But, after reviewing all of the summary judgment evidence before the Court, the Court is convinced that although GISD's actions may have harmed relations amongst it and a few of its employees, those actions were not a result of unlawful racial discrimination. In conclusion, the Court holds that since Plaintiffs have failed to set forth specific facts showing that there is a genuine issue for trial with respect to either of their discriminatory compensation claims or Watkins's retaliation claim, Plaintiffs' claims against GISD are hereby **DISMISSED WITH PREJUDICE**. A final judgment reflecting this dismissal will be issued concurrently with this Order.

**IT IS SO ORDERED.**